IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

MICHAEL LANE                        §

v.                                  §        CIVIL ACTION NO. 6:14cv14

JOHN A. RUPERT, ET AL.              §

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND DENYING MOTION TO ALTER OR AMEND THE JUDGMENT

The Plaintiff Michael Lane, a prisoner of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Lane named TDCJ wardens John Rupert, Larry Doyle, Jeff Catoe, and Patrick Cooper; Major Guillermo Delarosa; Major Edwin Atchison; and Officers Jason Smith, Tina Staples, Tonia Brown, and Donna Mathiews as Defendants in his lawsuit.

After an evidentiary hearing, the Defendants Rupert, Brown, and Staples were ordered to answer Lane's claims that Brown and Staples conducted strip searches of him and that a policy existed of permitting female officers to conduct strip searches. The Defendants filed a motion for summary judgment raising the defenses of qualified and Eleventh Amendment immunity and arguing that Lane cannot recover compensatory damages without a physical injury and cannot recover nominal or punitive damages because he has not shown a constitutional violation. The

1

Defendants further contended that Lane failed to specify any dates on which the cross-gender strip searches allegedly occurred, so they are unable to produce any documents concerning whether a cross-gender search was conducted or why.

Warden Rupert provided an affidavit stating that the Coffield Unit does not have a policy or practice of allowing female officers to actively participate in strip searches and that the unit complies with Administrative Directive 03.22, which provides that strip searches are normally done by male officers but may be performed by female officers in extraordinary circumstances and when approved by a supervisor. Rupert stated that Lane failed to present any evidence that a particular cross-gender search which may have been done did not have exigent circumstances.

When prisoners have scheduled events outside the unit, Rupert stated that searches for contraband are conducted in the P2 hallway. Since the lawsuit was filed, privacy shields have been installed to allow prisoners additional privacy while these searches are conducted.

The Defendants further argued in their motion for summary judgment that Administrative Directive 03.22 has been held constitutional and that Lane did not meet his burden of pleading specific facts to show an unconstitutional application of an otherwise valid policy. They contend that the searches in the P2 hallway are rationally related to legitimate penological interests.

Lane responded to the motion for summary judgment by arguing that Staples and Brown were the primary officers conducting searches on the incoming and outgoing chains, so the Defendants should have in their possession the dates of the searches about which he complains.[1] He asked if the Coffield Unit has a policy prohibiting females from strip searching prisoners, why do they hire female officers to perform this duty. He contended that these hiring practices created the constitutional violations and maintained that Rupert's affidavit was conclusory and speculative.

---

[1] The docket reflects that the Defendants were ordered to disclose all documents relevant to the claims or defenses of any party and that the Defendants did file a notice of discovery disclosure. Lane did not advise the Court that he believed the disclosure to be incomplete or file a motion to compel additional disclosure.

In an attached affidavit, Lane contended that he has seen other inmates strip searched by female officers as an act of discipline and that both male and female trainees strip searched other prisoners in the main hallway. Lane stated that he was strip searched on October 28, 2014, by a male officer while Staples stood across from him. He claimed to have been strip searched by Brown and Staples in August of 2012 and April of 2013, and several other times between 2011 and 2014.

None of the grievances furnished by the Defendants as summary judgment evidence contained any specific occasions on which Lane claimed to have been strip searched by Brown or Staples. In grievance no. 2914048055, Lane raised a number of issues, primarily involving Officer Mathiews but also referring to strip searches by Brown and Staples. The response to this grievance only referred to the complaint against Mathiews.[2]

After reviewing the pleadings and the summary judgment evidence, the Magistrate Judge issued a Report recommending that the motion for summary judgment be granted. The Magistrate Judge determined that Lane did not identify any specific strip searches by female guards or set out the circumstances of these searches, but provided only general allegations with vague dates. The district court's opinion in *Oliver v. Scott*, civil action no. 3:98cv2246, 2000 U.S. Dist. LEXIS 9801, 200 WL 968784 (N.D.Tex., July 13, 2000), *aff'd* 276 F.3d 736 (5th Cir. 2002), observed that the plaintiff there "identifies no specific search of his body by a female guard" that occurred at the Dawson State Jail while it was operated by the defendant Correctional Corporation of America. The only grievance filed did not point to a specific unconstitutional search. The district court concluded that the plaintiff failed to allege or to provide any evidence that he was subject to an unconstitutional

---

[2]TDCJ policy requires that prisoners submit only one issue per grievance. If multiple issues are raised in a single grievance, only one such issue is normally addressed. *See, e.g.*, *Delgado v. TDCJ-ID*, civil action no. 6:13cv306, 2014 U.S. Dist. LEXIS 3431, 2014 WL 174936 (E.D.Tex., January 10, 2014); *Randle v. Woods*, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The Defendants did not raise the question of whether Lane exhausted his administrative remedies, so the Magistrate Judge did not address it.

strip search while he was incarcerated under the supervision of CCA, and dismissed this claim based on the lack of specificity in the pleading. The Fifth Circuit affirmed this dismissal.

The Magistrate Judge further observed that the official policies of TDCJ provide that cross-gender searches may be conducted only in extraordinary circumstances and when approved by a supervisor, and that if a female officer is present in the vicinity of a strip search, her duty is solely to provide security. The Magistrate Judge concluded that Lane failed to show that Warden Rupert instituted a policy contravening the official policy of TDCJ and that to the extent Lane asserted the existence of a "custom," he failed to identify any specific instances of a constitutional violation resulting from the alleged custom and did not show that any such custom rose to the level of objective deliberate indifference to his constitutional rights. While Lane complained that female guards are hired to work in areas where strip searches are conducted, the Magistrate Judge stated that prisons have a compelling interest in offering equal employment opportunities to female guards and that Lane failed to show a policy or custom of hiring female guards for the purpose of conducting strip searches. The Magistrate Judge also determined that the Defendants were entitled to qualified immunity.

In his objections to the Report, Lane states that the Defendants never denied strip searching him, which he maintains precludes qualified immunity. Lane also reiterated his claim that Rupert instituted a policy allowing strip searches by female officers.

Lane also objected to an earlier Report recommending dismissal of all of the Defendants other than Rupert, Brown and Staples. These objections voluntarily dismissed the claims against Wardens Doyle, Catoe, and Cooper, but argued that the Magistrate Judge had provided no "established federal law" stating that female guards such as Mathiews could work in the shower and that female officers should not review video tapes showing strip searches.

The Court overruled Lane's objections and adopted the Reports of the Magistrate Judge, stating that placing female officers in showers or otherwise permitting security surveillance did not violate the constitutional rights of male prisoners, Lane's vague and general allegations did not raise

any right to relief above a speculative level, and Lane failed to offer specific facts showing the existence of an unconstitutional policy.

**II. Lane's Motion to Alter or Amend the Judgment and the Report of the Magistrate Judge**

After the entry of final judgment, Lane filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). In this motion, Lane complained that Officer Mathiews entered the shower with inmates present and participated in shower activities including passing out clothing, walking among and harassing naked male prisoners, controlling the water valve, and unspecified "sexual misconduct with naked offenders." He did not allege that Mathiews harassed him or engaged in sexual misconduct with him. Lane again complained of strip searches on unspecified dates by Brown and Staples, but argued that he did not have to provide specific dates because prosecutors use the term "on or about" while they, the prosecutors, assert that the statute of limitations is the controlling factor and not the date. Lane also contended that inmates are stripped naked in the hallway in front of female guards, employees, and visitors, stating that he filed grievances but nothing was done, and that male prisoners suffer "daily debasing, humiliation, and psychological discomfort before the opposite sex."

The Magistrate Judge issued a Report stating that the fact Mathiews was present in the shower handing out clothes and walking among the inmates did not show a constitutional violation and that Lane's vague and general claims regarding strip searches by Brown and Staples on unknown dates and under unknown circumstances were not sufficient to meet his burden of proof to overcome qualified immunity. The Magistrate Judge rejected Lane's assertion that he did not have to cite specific dates because prosecutors did not and determined that Lane failed to show an intervening change in controlling law, newly discovered evidence, or a manifest error of law or fact which must be corrected, as required for relief under Rule 59(e). Thus, the Magistrate Judge recommended that Lane's motion to alter or amend the judgment be denied.

### III. Lane's Objections

In his objections, Lane states first that every inmate who entered the shower while Mathiews was present was subject to "harassing sexual misconduct," apparently by the mere fact of her being present. He notes that he was in the shower while Mathiews controlled the water and that Mathiews issued him clothes while he stood before her naked. He claims her duty post was in the boot room, not the shower, but that her presence in the shower was to "gratify her deviant sexual behavior." Lane attempts to draw a distinction between "observing" the shower activities and "participating" in the shower activities, which participation he claims was for "self-gratification."

The response to Lane's grievance no. 2014065937 (docket no. 37-2, p. 21) indicates that officers assigned to the laundry work all areas of the laundry, including the showers and issue area. The fact that Mathiews was present in the shower area while prisoners were showering is not itself a constitutional violation. *See Garrett v. Thaler*, 560 F.App'x 375, 2014 U.S. App. LEXIS 5987 (5th Cir., April 1, 2014) (no constitutional violation from TDCJ placing video recording cameras in the restrooms, showers, and dressing areas of the prison, or in having female officers view male inmates both in those areas and on the cameras); *Mitchell v. Quarterman*, civil action no. 6:09cv404, 2010 WL 2330382, *Report adopted at* 2010 WL 2330387, *aff'd* 515 F.App'x 244, 2012 WL 7637638 (5th Cir., May 15, 2012) (rejecting prisoner's claims that having female guards routinely observing male inmates showering and using the toilet violated his right to privacy as well as his religious rights). In *Davis v. Chairman, Texas Board of Criminal Justice*, civil action no. 6:10cv646, 2011 WL 2600900 (E.D.Tex., May 27, 2011), *Report adopted at* 2011 WL 2669327 (E.D.Tex., July 6, 2011), this Court rejected the plaintiff's claim that having female officers work in the showers violated his constitutional rights, *citing West v. Parker*, 68 F.3d 446, 1995 WL 581496 (5th Cir., August 23, 1995) *and Petty v. Johnson*, 193 F.3d 518, 1999 U.S. App. LEXIS 22626 (5th Cir., August 25, 1999). This contention is without merit.

Lane further states that after his lawsuit was filed, Rupert ordered Mathiews never to enter the shower during the general population shower, and Mathiews transferred to another unit. Even

assuming that Lane somehow has personal knowledge of what orders were given by Warden Rupert to Officer Mathiews, an order by Rupert not to enter the shower during the general population shower does not show that Mathiews' prior conduct in entering the shower amounted to a constitutional violation. *See Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992). This claim is without merit.

Lane next asserts that he submitted an affidavit stating that he went on the medical chain to the hospital in Galveston in the first week of August of 2012 and in April of 2013. This affidavit (docket no. 42, p. 14) reads, in pertinent part, as follows:

> I went on medical chain to Hospital Galveston in the first week of August 2012 and April 2013. Between the years 2011 and 2014, I have been on several medical chains to the Beto Unit for therapy and back brace. I have been strip searched by Officer Tina Staples and Officer Tonia Brown on these occasions. At all times during the involuntary exposure of my genitals, I felt debased and humiliated, degraded and suffered psychological discomfort.

In order to state a claim upon which relief may be granted, a plaintiff must plead enough facts to state a claim to relief which is plausible on its face, and must plead those facts with enough specificity to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); This plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that the defendant has acted unlawfully. *Bell Atlantic*, 550 U.S. at 556. If a complaint pleads facts that are "merely consistent" with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Whatley v. Coffin*, 496

F.App'x 414, 2012 U.S. App. LEXIS 22894, 2012 WL 5419531 (5th Cir., November 7, 2012), *citing Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

The Fifth Circuit Court of Appeals has repeatedly encouraged the district courts to require highly fact-specific pleading by a plaintiff in a §1983 lawsuit who is attempting to overcome a plea of qualified immunity. *See, e.g.*, *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995). A complaint which raises the likely issue of immunity cannot be cast in broad, vague, general, or conclusory terms, but must include detailed facts supporting the contention that the plea of immunity cannot be sustained. *Gobert v. Caldwell*, 463 F.3d 339, 348 n.27 (5th Cir. 2006); *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

Lane's claim against Brown and Staples falls well short of the level of facial plausibility but is instead a general and conclusory allegation which at best is merely consistent with the liability of these Defendants. His contentions are plainly insufficient to overcome the qualified immunity defense raised by Brown and Staples. The Fifth Circuit has held that where a defendant official has raised the issue of qualified immunity, the burden shifts to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. The plaintiff cannot meet his burden through conclusory allegations and assertions. *Bazan ex rel. Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001). Lane has failed to meet this burden.

Lane next argues that strip searches can be unconstitutional if they are needlessly intrusive, abusively performed, or conducted in an unnecessarily public manner or with the unnecessary involvement of staff of the opposite sex. He cites *Hutchins v. McDaniels*, 512 F.3d 193, 195–96 (5th Cir. 2007), in which an officer forced a prisoner to strip, stick out his buttocks as far as possible and spread his legs wide, and then hop on one foot for about thirty feet and back again on the other foot, despite the prisoner's protests that he had a back injury and a bad ankle. The Fifth Circuit held this search was unreasonable and violated the prisoner's Fourth Amendment rights.

Lane does not allege any comparable or even similar facts with regard to the searches he claims to have undergone. The only search about which he provides any details occurred on October 28, 2014, several months after the filing of this lawsuit, in which he states he was searched by a male officer with Staples in the vicinity. As the Magistrate Judge correctly determined, such a search is not a constitutional violation. *Oliver v. Scott*, 276 F.3d at 745. Although Lane contends that Rupert "provides no argument as to probable cause to justify the strip search of Lane in the public view of female officials and female employees in violation of Lane's Fourth Amendment rights," the Fifth Circuit has held that strip searches may be conducted in public, even in the presence of female guards, if the presence of the female officers is required to protect a legitimate governmental interest such as maintaining security. *Johnson v. Rupert*, 647 F.App'x 407, 2016 U.S. App. LEXIS 7963, 2016 WL 1743070 (5th Cir., May 2, 2016), citing Letcher, 968 F.2d at 510; *Tuft v. Texas*, 410 F.App'x 770, 2011 U.S. App. LEXIS 434, 2011 WL 72198 (5th Cir., January 7, 2011), *citing Oliver*, 276 F.3d at 745. The fact that a strip search is conducted in a public hallway likewise does not set out a constitutional violation. *Samford v. Staples*, 249 F.App'x 1001, 2007 WL 4170636 (5th Cir., November 20, 2007); *Tasby v. Lynaugh*, 123 F.App'x 614, 2005 U.S. App. LEXIS 2973 (5th Cir., February 18, 2005). Lane has not shown that the presence of female officers in a main hallway was for purposes other than maintaining security. This contention is without merit.

Lane further asserts that he suffered "daily debasing, humiliation, and psychological discomfort before the opposite sex" and that the courts have "evaded the question as the mental sufferage [sic] male offenders endure being debase and subjected the weaker female sex [sic] dominating their rights to retain their clothing. The courts have only answered the minimal bodily privacy right and it emphasize the word minimal. However, the court never consider the mental culpable state of the inmate subjected to these infringing on his rights daily and without relief and weigh the degree of mental deterioration it impose on the inmate's psychological mental state or its long term effect and effects sociably [sic]."

In *Urias v. Hudson*, civil action no. 5:09cv130, 2010 WL 3257697 (E.D.Tex., July 16, 2010), *Report adopted at* 2010 WL 3257964 (E.D.Tex., August 17, 2010), *aff'd* 429 F.App'x 438, 2011 WL 2473060 (5th Cir., June 21, 2011), the plaintiff complained that during lockdowns, strip searches were conducted in a public place, with female officers present. The prisoners were often yelled at and threatened with disciplinary cases, and these searches and the verbal abuse caused emotional injury. This Court held that the fact strip searches were carried out with female officers in the vicinity was not a constitutional violation and the claim for emotional stress, caused in part by stripping in the presence of female officers, did not set out a constitutional violation. *Accord*, *Ashann–Ra v. Commonwealth of Virginia*, 112 F.Supp.2d 559, 566 (W.D.Va.2000) (rejecting claim for emotional distress over being viewed in the shower by female officers). Lane's claim of psychological damage is without merit. *See also Oliver*, 276 F.3d at 745; *Tuft*, 410 F.App'x at *5 (prisoner's constitutional right to bodily privacy is "minimal at best"); *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994) (prisoner loses those rights that are necessarily sacrificed to legitimate penological needs). There is no right to a stress-free environment in prison. *Cupit v. Jones*, 835 F.2d 82, 84 (5th Cir. 1987). This contention is without merit.

## IV. Conclusion

The Fifth Circuit has stated that relief under Rule 59(e) is appropriate where there has been an intervening change in controlling law, the movant presents newly discovered evidence which was previously unavailable, or to correct a manifest error of law or fact. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir.2003). A Rule 59(e) motion cannot be used to raise arguments which could and should have been made before the judgment issued. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

Lane has failed to show an intervening change in controlling law or newly discovered evidence which was previously unavailable. Nor has he demonstrated a manifest error of law or fact which must be corrected. His motion to alter or amend the judgment is without merit.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.")  Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit.  It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 56) is **ADOPTED** as the opinion of the District Court.  It is further

**ORDERED** that the Plaintiff's motion to alter or amend the judgment (docket no. 55) is **DENIED**.

**So Ordered and Signed**
**Feb 8, 2017**

_____
Ron Clark, United States District Judge